UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELI LILLY AND COMPANY,

       Plaintiff,

v.                                   Case No.  8:24-cv-1488-TPB-SPF

PHTB LLC and PRECISION WEIGHT
LOSS CENTER, LLC,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Eli Lilly and Company's ("Eli Lilly") Motion for Entry of Default Final Judgment in this trademark infringement case. (Doc. 19). Defendant Precision Weight Loss Center, LLC ("Precision") has not responded to the motion, and the deadline has passed.[1] For the reasons stated here, the Court recommends the motion be granted.

## I. BACKGROUND

Eli Lilly, an Indiana corporation with its principal place of business in Indiana, markets and sells two medications for serious health conditions throughout the United States under the brand names Mounjaro and Zepbound. (Doc. 32 at ¶¶ 1, 2, 33). To advance treatment of chronic conditions such as diabetes and obesity, Eli Lilly developed these drugs with a brand-new class of GLP-1 (glucagon-like peptide-1) and GIP (glucose-dependent insulintropic polypeptide) dual-receptor antagonists that uses tirzepatide as the active ingredient. (*Id.* at ¶ 2). Mounjaro and Zepbound are the only FDA-approved GLP-1/GIP

---

[1] Eli Lilly and Defendant PHTB, LLC d/b/a Precision Health Tampa Bay ("PHTB"), reached a settlement agreement which was approved by the Court. (Docs. 78, 83). This leaves Precision as the only remaining Defendant.

medicines and "are the result of billions of dollars of investments in research and development" by Eli Lilly. (*Id.* at ¶¶ 2, 30).  Manufacturing Mounjaro and Zepbound "requires extensive testing and controls and specialized equipment" and are "always . . . accompanied with important, FDA-approved labels, instructions, and warning." (*Id.* at ¶¶ 2, 32).  Eli Lilly owns two federally registered trademarks for Mounjaro:  U.S. Trademark Registration No. 6,809,369 and U.S. Trademark Registration No. 7,068,463 (collectively, "the Mounjaro Marks").  (*Id.* at ¶ 36).[2]

Precision is a cosmetic weight loss center that advertises the drugs it offers on its website.  (*Id.* at ¶ 6, 12).  It operates as a Georgia limit liability corporation and had a financial interest in PHTB, a weight loss center in Tampa, Florida.  (*Id.* at ¶¶ 10, 11, 24).  It's website, which it owns and shared with PHTB, also targets and is accessed by Florida residents.  (*Id.* at ¶ 12, 15).

Eli Lilly claims that Precision sold competing "compounded" drug products that purport to be Mounjaro or its generic version.  (*Id.* at ¶¶ 5, 68).  Eli Lilly argues Precision's use of the Mounjaro Marks constitutes infringement and that these statements are false advertisements because Eli Lilly never sold Mounjaro to Precision for resale or redistribution and there is no generic version of Mounjaro.  (*Id.* at ¶ 7, 68).

Specifically, Eli Lilly explains that Precision used its website and social media account to advertise to consumers that they could "[d]iscover the power of Mounjaro at Precision Health" and Precision claimed that it offered the "Mounjaro equivalent Tirzepatide." (Doc. 32-2).  Precision's website had a page dedicated to its "Tirzepatide Program," which stated,

---

[2] Eli Lilly also owns one federally registered trademark for Zepbound:  U.S. Trademark Registration No. 7,288,373.  (*Id.* at ¶ 38).  However, Eli Lilly does not allege any claims against Precision regarding Zepbound.

"Tirzepatide's brand name is Mounjaro, and we offer it at Precision Health." (*Id.* at 2). The consumer was then invited to contact Precision to "[s]chedule to get started with Tirzepatide." (*Id.* at 3).

Precision also went on to use tirzepatide and Mounjaro interchangeably by using "Tirzepatide/Mounjaro" when addressing popular questions about tirzepatide, like "What does the data show about Tirzepatide/Mounjaro for weight loss?" and "What are the side effects of Tirzepatide/Mounjaro?". (*Id.* at 3-4). And, when discussing how much "Tirzepatide/Mounjaro" costs, Precision claimed: "Although . . . brand name Mounjaro is very expensive with pricing for the low dosing at around $1100.00, [Precision] now offer[s] the equally effective Tirzepatide at the starting price of only $400 (with cash discount)." (*Id.* at 15).

Precision also touted the benefits of tirzepatide and its effectiveness by citing Mounjaro's outcomes and clinical trial results. (*Id.* at 2-3, 23). Precision cited the positive results of the SURMOUNT-1 trial, which was conducted by Eli Lilly. (*Id.* at 2-3, 23). Precision also relied upon data about weight changes credited to tirzepatide by citing Mounjaro's results. (*Id.* at 24-25).

On Precision's Instagram account, it sought to educate possible customers on "the benefits of Tirzepatide (Mounjaro Generic)." (*Id.* at 21). Precision posted: "Did you know? Tirzepatide, the revolutionary medication for diabetes and weight management, also goes by the name Mounjaro. Discover the power of Mounjaro at Precision Health and take control of your health today[.]" (*Id.* at 22).

Against this backdrop, on June 20, 2024, Eli Lilly brought this action against Defendant PHTB asserting claims for trademark infringement, false designation of origin,

3

unfair competition, and false advertising pursuant to Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125 and violations of the Florida Deceptive and Unfair Practices and Trade Act ("FDUPTA"), Florida Statutes § 501.201, *et seq.* and Florida common law trademark infringement and unfair competition. (Doc. 1). On October 4, 2024, Plaintiff filed an amended complaint, asserting the same claims but against both PHTB and Precision. (Doc. 32).

Eli Lilly was unable to serve Precision with the amended complaint and sought the Court's permission to alternatively serve it via email or by serving the Secretary of State of Georgia. (Doc. 32). The Court permitted Eli Lilly to serve Precision via the Secretary of State of Georgia. (Doc. 55). Eli Lilly effected service of process in late January 2025. (Docs. 65, 65-1). Precision has not appeared in the case or responded to Plaintiff's amended complaint. Eli Lilly moved for entry of a clerk's default under Rule 55(a), which the Clerk of Court entered on March 6, 2025. (Docs. 72, 73). Eli Lilly now timely moves for a default judgment under Rule 55(b) as to Precision seeking a permanent injunction, but requests that the Court defer judgment as to damages. (Doc. 76 at 3 n.1, 24); *see* M.D. Fla. R. 1.10(c) ("Within thirty-five days after entry of a default, the party entitled to a default judgment must apply for the default judgment[.]").

## II. STANDARD OF REVIEW

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once this has occurred, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). A court may enter a default judgment against a party

4

who has failed to respond to a complaint if the complaint provides a sufficient basis for the judgment. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

Before entering a default judgment, the district court must ensure that the well-pleaded allegations in the complaint, taken as true by virtue of default, actually state a substantive cause of action and that there is a sufficient basis in the pleadings for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citation omitted). Courts assess pleadings in connection with a default judgment by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citation omitted). A court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In addition to the pleadings, the court may also consider evidence supporting the motion for default judgment, including testimony and affidavits. *See EEOC v. Titan Waste Servs. Inc.*, No. 3:10-cv-379-MCR-EMT, 2014 WL 931010, at *6 (N.D. Fla. Mar. 10, 2014); *Super Stop No. 701, Inc. v. BP Prod. N. Am. Inc.*, No. 08-cv-61389, 2009 WL 5068532, at *2 n.4 (S.D. Fla. Dec. 17, 2009) (noting that "unchallenged affidavits are routinely used to establish liability and damages" for default judgment). At all times, the decision to enter a default judgment remains within the district court's discretion. *Hamm v. Dekalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985).

"A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" outlined in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561

F.3d 1298, 1307 (11th Cir. 2009) (quotation omitted).  Damages, however, are not admitted by default.  *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). Rather, the plaintiff bears the burden of demonstrating the damages it contends should be awarded, with the court determining the amount and character of damages to be awarded. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).

If default judgment is warranted, the district court may hold an evidentiary hearing "'to determine the amount'" of losses avoided if "all essential evidence is in the record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (quoting Fed. R. Civ. P. 55(b)(2) and citing *S.E.C. v. First Fin. Group of Tex., Inc.,* 659 F.2d 660, 669 (5th Cir.1981)).

## III. DISCUSSION

### A.    Subject Matter and Personal Jurisdiction

The court has subject matter jurisdiction over this action.  Precision sues under the Lanham Act, a federal statute, granting the Court federal question subject matter jurisdiction over those claims.  28 U.S.C. § 1331.  Precision also sues under FDUTPA and Florida common law trademark infringement and unfair competition, but the Court is permitted to exercise subject matter jurisdiction over those claims pursuant to supplemental jurisdiction because they arise from the same conduct and circumstances as the Lanham Act claims, and thus form part of the same case or controversy. 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Palmer v. Hosp. Auth. Of Randolph Cnty.*, 22 F.3d 1559, 1567-69 (11th Cir. 1994).

The next issue is whether the Court has personal jurisdiction over Precision which involves a two-step analysis.  *See Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).  First, the Court must determine whether jurisdiction is appropriate under

Florida's long-arm statute. *Id.*; Fla. Stat. § 48.193. Personal jurisdiction can be established over those who operate, conduct, engage in, or carry on business within Florida "or having an office" the state or if the entity causes "injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, . . . [t]he defendant was engaged in solicitation or service activities within this state." Fla. Stat. § 48.193(1)(a)(1), (1)(a)(6)(a). Here, Precision owns an interest in a business operation in Florida and solicits consumers in the state. The first prong is therefore satisfied.

In step two of the inquiry, the Court looks at whether the exercise of personal jurisdiction over Defendants would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mut. Servs. Ins. Co.*, 358 F.3d at 1319. Due process requires "that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This requirement "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 319). Here, because Precision owns an interest in a weight loss clinic in Florida and owns that clinic's website, it regularly conducts business in the state. (Doc. 32 at ¶ 6). Therefore, exercising jurisdiction over Precision "does not offend 'traditional notions of fair play and substantial justice.'" *Mut. Servs. Ins. Co.*, 358 F.3d at 1319 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

Finally, courts interpreting Florida law "require strict compliance with the Florida statutes governing service of process, and absent strict compliance, the court lacks personal

jurisdiction over the defendant." *Foremost Prop. & Cas. Ins. Co. v. Fentress Bus. Ctr., LLC*, 2022 WL 19842687, at \*2 (M.D. Fla. June 8, 2022) (citing *Anthony v. Gary J. Rotella & Assocs., P.A.*, 906 So.2d 1205, 1207 (Fla. 4th DCA 2005)).  Here, Eli Lilly perfected service of process on Precision in late-January 2025 in accordance with the Court's Order.  (Docs. 55, 65, 65-1).  The Court therefore has subject-matter jurisdiction over this case and personal jurisdiction over Precision.

### B.    Liability

In Count I, Eli Lilly avers that Precision willfully infringed on its trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.  (Doc. 32 at ¶¶ 55-63).  To prevail on its trademark infringement claim, Eli Lilly must establish: (1) that Eli Lilly possesses a valid mark, (2) that Precision used the mark, (3) that Precision's use of the mark occurred "in commerce," (4) that Precision used the mark "in connection with the sale . . . or advertising of any goods," and (5) that Precision used the mark in a manner likely to confuse consumers.  15 U.S.C. § 1114(1)(a); *see N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).  The term "use in commerce" in the context of the Lanham Act is a jurisdictional predicate and can be used "to establish ownership rights."  *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194-95 (11th Cir. 2001) (quotation marks and citations omitted).

In Counts II and III, Eli Lilly alleges that Precision's unauthorized use in commerce of the Mounjaro Marks also constituted the use of a false designation of origin and a misleading description and representation of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The Lanham Act imposes civil liability on

> [a]ny person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

misleading description of fact, or false or misleading representation of fat, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities[.]

15 U.S.C. § 1125(a)(1)(B). The Eleventh Circuit has referred to 15 U.S.C. § 1125(a) as a "federal cause of action for unfair competition." *Savannah Coll. of Art & Design, Inc. v. Sportwear, Inc.*, 872 F.3d 1256, 1261 (11th Cir. 2017).

Although 15 U.S.C. § 1114(1)(a) guards against "infringement" and 15 U.S.C. § 1125(a) protects against "false designation of origin," the Eleventh Circuit has recognized that "an unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 n. 14 (11th Cir. 1989); *see Savannah Coll. of Art & Design, Inc.*, 872 F.3d at 1261 ("We, like other circuits, often blur the lines between section 1114 claims and section 1125 claims because recovery under both generally turns on the confusion analysis"); *Tana v. Dantanna's*, 611 F.3d 767, 773 n.5 (11th Cir. 2010) (stating that the district court's error in analyzing a trademark case under section 1114 rather than section 1125 was irrelevant "because the district court based its grant of summary judgment on the likelihood-of-confusion prong").

In Counts IV, V, and VI Eli Lilly claims that Precision's unauthorized use of the Mounjaro Marks also constituted violations of Florida state laws, including FDUPTA and the common law claims of trademark infringement and unfair competition. The legal standards for all of these state law claims are the same as the legal standards underpinning federal trademark infringement. *See Suntree Technologies, Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, 1345 (11th Cir. 2012) ("[T]he legal standards we apply to [the FDUPTA] claim are the same as those we have applied under section 43(a) of the Lanham Act.") (quoting *Crystal Entm't & Filmworks, Inc. v. Jurado,* 643 F.3d 1313, 1323 (11th Cir. 2011)); *Custom Mfg. & Eng'g,*

*Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652-53 (11th Cir. 2007) ( stating "the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim").  The Court will therefore evaluate all of Eli Lilly's claims using the federal standards.

### i.      Trademark Infringement

Beginning with Eli Lilly's trademark infringement claims, Eli Lilly has shown that it possesses valid marks by attaching its registration certificates for the Mounjaro Marks from the United States Patent and Trademark Office to its amended complaint.  (Doc. 32-1).

Eli Lilly has also made a plausible showing that Precision used the Mounjaro Marks in commerce and in connection with the advertisement and sale of medications.  Precision used the internet to advertise its compounded drugs as if they were Mounjaro or a generic equivalent.  *See Axiom Worldwide, Inc.*, 522 F.3d at 1218.

Furthermore, Eli Lilly has established the likelihood of confusion.  In making this assessment, the Eleventh Circuit considers seven factors: "(1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) [the] defendant's intent; and (7) actual confusion."  *Id.* at 1201 n.22.  "Of these, the type of mark and the evidence of actual confusion are the most important."  *Id.* (citation omitted).  As the Eleventh Circuit has explained:

> These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case .... The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.

*Custom Mfg.*, 508 F.3d at 650 (quotation marks and citation omitted).  The Court will weigh each element below.

First, the type of mark depends on whether the "relationship between the name and the service or good it describes" is such that the chosen name qualifies as generic, descriptive, suggestive, or arbitrary.  *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335-41 (11th Cir. 1999).  "The stronger the mark, the greater the scope of protection accorded it[;] the weaker the mark, the less protection it receives." *Frehling*, 192 F. 3d at 1335.  The strength of the mark is evaluated in two steps.  *Id.*  The mark should first be classified

> as "generic," "descriptive," "suggestive," or "arbitrary" based on the relationship between the mark and the service or good it describes. Generic marks are the weakest and are not entitled to protection—they refer to a class of which an individual product is a member (for example, "liquor store" used in connection with the sale of liquor). Descriptive marks describe a characteristic or quality of an article or service (for example, "vision center" denoting a place where glasses are sold). Suggestive marks suggest characteristics of the goods and services and require imaginative effort by the consumer in order to be understood as descriptive (such as "penguin" being applied to refrigerators). Finally, arbitrary marks—the strongest of the four categories—bear no relationship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services).

*Id.*  Of these categories, arbitrary marks are the strongest.  *Id.*  A court then considers "the degree to which third parties make use of the mark" such that "the less . . . third parties use the mark, the stronger it is, and the more protection it deserves."  *Id.*

Here, the Mounjaro Marks "bear no relationship to" medicine and are therefore arbitrary marks.  *See id.*  Moreover, the Mounjaro Marks are not otherwise used by third parties because it was created by Eli Lilly and only functions to identify Eli Lilly's medication. (Doc. 32 at ¶ 41).  This factor therefore weighs in favor concluding that Precision's use of the Mounjaro Marks caused confusion. *See Earth, Wind, & Fire IP, LLC v. Substantial Music Grp. LLC*, 720 F. Supp. 3d 1261, 1281 (S.D. Fla. 2024) (A "'strong trademark is one that is rarely

used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties.'") (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983)).

Second, the similarity between two marks can be determined when "the overall impressions that the marks create, including the sound, appearance, and manner in which they are used" are similar. *Frehling*, 192 F.3d at 1337. "The addition of a relatively generic term of lesser importance does not significantly reduce the chance of consumer confusion." *Earth, Wind & Fire*, 720 F. Supp. 3d at 1282. Here, Precision displayed the Mounjaro Marks on its website and social media posts by using the name "Mounjaro" with the exact same spelling and as a descriptor of the medications Precision advertised as available at its clinics. *See* (Doc. 32-2). The appearance and the way the marks are used easily establishes the similarity between the Mounjaro Marks and the marks used by Precision. As such, this factor also weighs in favor of finding a likelihood of confusion. *See Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 132 (11th Cir. 2022) (finding that nearly identical marks can cause confusion and false associations in the marketplace).

Third, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co.*, 711 F.2d at 976 (quoting *Exxon Corp. v. Texas Motor Exch., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)). The Court must determine whether "the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling*, 192 F.3d at 1338. Put another way, the question is whether "the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out

12

both goods." *Id.* (quoting *E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985)).

Here, the facts support a finding of similarity of the products offered. Eli Lilly and Precision both offer medications for weight management that contain tirzepatide. (Doc. 32 at ¶¶ 7, 26). Because the focus of this question is "on the reasonable belief of the average consumer as to what the likely source of the goods was," *Frehling*, 192 F.3d at 1338, an average consumer seeking Mounjaro for weight loss could easily believe that they could acquire that medication from either Eli Lilly or Precision. Indeed, Precision encouraged consumers to "[d]iscover the power of Mounjaro at Precision Health and take control of your health journey today" but did not have Mounjaro to offer them. (Doc. 32-2 at 22). Thus, the prong relating to the similarity in the goods being offered weighs in favor of Eli Lilly. *See Pegasus Labs. Inc. v. My Dog Has Fleas*, LLC, 2016 WL 11584961, at *3–4 (M.D. Fla. Oct. 17, 2016) (finding a likelihood of confusion where the defendant "represented that the 'PROIN' drug was the generic version of the Plaintiff's PROIN® drug.").

Fourth, as it relates to the parties' sales methods and customers, "[t]his factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling*, 192 F.3d at 1339. "Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception." *Id.* Put another way, "[d]ifferences in sales methods can help consumers distinguish between sources of goods and services. Conversely, similar methods of selling similar products and services are more likely to confuse consumers." *Earth, Wind, & Fire*, 720 F. Supp. 3d at 1283 (citing *Frehling*, 192 F.3d at 1339). In order to establish a likelihood of confusion amongst consumers under this factor, at least "some degree of overlap should be present between the

13

parties' "outlets and customer bases[.]" *Frehling*, 192 F.3d at 1339. Here, the parties share sales methods by advertising the Mounjaro medication online and sharing the same customer base, specifically those seeking medication to lose weight. (Doc. 32 at ¶¶ 16-22, 70, 89); (Doc. 32-2). There is consequently "some degree of overlap present," which also weights this factor in Eli Lilly's favor. *Frehling*, 192 F.3d at 1339.

Fifth, the similarity-of-advertising factor considers "whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." *Id.* at 1340 (citation omitted). "Like with similarity of trade channels and customer bases, the greater the overlap or similarity of the audiences, the greater the likelihood of confusion. Identity of advertising methods is not required, but instead we assess whether the overlap in readership of the parties' advertisements is significant enough that a possibility of confusion could result in a fashion very similar to the previous factor." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 955 (11th Cir. 2023). In the instant case, just as Eli Lilly targets consumers seeking weight management medication, Precision is also advertising to "the exact sort of people who may be interested in buying" the same thing. (Doc. 32 at ¶¶ 16-22, 70); (Doc. 32-2); *FCOA LLC*, 57 F.4th at 955 (finding that an overlap in advertisement audience where both companies were targeting the same audiences).

Sixth, when evaluating an alleged infringer's intent, "[i]f it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling*, 192 F.3d at 1340. Here, accepting Eli Lilly's allegations as true, Precision used the Mounjaro Marks in order to capitalize on Eli Lilly's work and

reputation by referencing tirzepatide and Mounjaro interchangeably and stating that Mounjaro was offered at Precision in both its name brand and generic forms.  (Doc. 32 at ¶ 5); (Doc. 32-2).  This factor accordingly weighs in favor of Eli Lilly.  *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 843 (11th Cir. 1983) (finding that circumstantial evidence that defendants "knew of [plaintiff] and its success when naming [infringing mark]" demonstrated wrongful intent).

The seventh and final factor, actual confusion of the consumer, involves both the number of instances of confusion and the kind of person confused.  *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir. 2010).  Eli Lilly admits that it cannot support this factor (Doc. 76 at 16), therefore it weighs in favor of Precision.

In weighing each of the factors, they strongly support a finding of a likelihood of confusion in Eli Lilly's favor. While factor seven leans in favor of Precision, the balance is overwhelmingly shifted in Eli Lilly's favor when considering the six other factors and Precision's use of "Mounjaro" to advertise its compounded drug that is demonstrably not Mounjaro or even an equivalent.  Thus, there is a compelling showing for a likelihood of confusion and Eli Lilly has established that Precision infringed on its Mounjaro Marks in violation of sections 1114 and 1125 of the Lanham Act, FDUPTA, and common law trademark infringement.

### ii.    False Advertising

Eli Lilly also alleges Precision committed false advertising in violation of the Lanham Act, FDUPTA, and Florida common law unfair competition by advertising.  Eli Lilly asserts

that Precision falsely advertised that it offered Mounjaro or a generic equivalent.  (Doc. 32 at ¶¶ 58-70); (Doc. 76 at 17-21).[3]

To succeed on its false advertising claim, Eli Lilly must prove that

(1) the ads of [Precision] were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) [Eli Lilly] has been—or is likely to be—injured as a result of the false advertising.

*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010).  Claims brought under the Lanham Act, FDUPTA, and Florida common law unfair competition for false advertising require the same proof to establish all claims. *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1115 (M.D. Fla. 2019) ("Ultimately, the success of a plaintiff's FDUTPA claim is tied to the federal Lanham Act claim for false advertising.").

To succeed on the first prong, Eli Lilly must prove that "the statements at issue were either (1) commercial claims that are literally false as a factual matter, or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004) (quotations and citation omitted). When a court determines

---

[3] Eli Lilly has multiple allegations related to the efficacy and safety of compounded drugs and emphasizes that they are unapproved by the FDA, have not undergone clinical studies, or have certain therapeutic outcomes.  *See e.g.*, (Doc. 32 at ¶¶ 42-57).  However, the Lanham Act, FDUPTA, and Florida common law claims of false advertising can be preempted by the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") when the claims "would require a court to make determinations about the safety, legality, and classification of new drugs that are more properly within the exclusive purview of the FDA." *Novo Nodisk v. IV Harmony Clinic LLC*, 2025 WL 1124969, at *2 (M.D. Fla. Apr. 16, 2025) (citations omitted).  "A Lanham Act claim should not proceed where a court would have to interpret and apply the FDCA's statutory regulatory provisions to determine the false or misleading nature of the advertising at issue." *Id.*  Here, Eli Lilly does not address this issue in its motion, so the Court declines to making any finding related to "the safety, legality, and classification of" Precision's compounded drugs.  The Court instead focuses only on whether Precision falsely advertised that it offered Mounjaro or an equivalent to its consumers.

whether an advertisement is false or misleading, it must "'analyze the message conveyed in full context,' and 'must view the face of the statement in its entirety.'" *Hi-Tech Pharmaceuticals, Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (quoting *Osmose, Inc.*, 612 F.3d at 1308).

Beginning with Precision's statements that it offered Mounjaro or its generic equivalent, these are literally false because Eli Lilly did not sell the medication to Precision and there are no generic or off-brand versions of the medication. (Doc. 32 at ¶ 5, 68); *see Axiom Worldwide, Inc.*, 522 F.3d at 1217 (affirming the trial court's finding of literal falsity because the company advertised a medical device as FDA approved when it was not).

Turning to Precision's references to Mounjaro's efficacy and the SURMOUNT-1 clinical trial, these statements are at least misleading. It would be difficult to find that these statements are literally false because Precision states that the cited outcomes were attributable to "Tirzepatide/Mounjaro" and that the SURMOUNT-1 clinical trial was performed on "Tirzepatide/Mounjaro," which appear to be accurate. *See* (Doc. 32 at ¶¶ 71, 76). The issue is, though, Precision use of these positive indicators for Mounjaro creates the false implication that Precision's compounded drugs were Mounjaro or its generic equivalent. Accordingly, Precision's reference to "Tirzepatide/Mounjaro" outcomes and the SURMOUNT-1 clinical trial were misleading. *See Axiom Worldwide, Inc.*, 522 F.3d at 1218 (affirming the trial courts finding of misleading statements because the company advertised a medical device as FDA approved when it was not).

Second, "in order to establish consumer deception and materiality, in addition to alleging a false or misleading advertisement, Plaintiff must allege that 'the advertisements deceived, or had the capacity to deceive, consumers[.]'" *Incarcerated Entertain., LLC v. Warner*

*Bros. Pictures*, 261 F. Supp. 3d 1220, 1232 (M.D. Fla. 2017) (quoting *Hickson Corp.*, 357 F.3d at 1260). Here, because Precision's statements that it offered Mounjaro or its generic equivalent are literally false, it is presumed that consumers were deceived as to those statements. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). As to the statements about the clinical trial and Mounjaro's outcomes, these had the capacity to deceive a consumer because a consumer could be duped into believing they were purchasing Mounjaro or its equivalent when she was not. *See Incarcerated Entertain*, 261 F. Supp. 3d at 1232 (finding allegations sufficient to establish an advertisement's capacity to deceive under the motion to dismiss standard).

Third, false statements in advertisements are material where they "misrepresent an inherent quality or characteristic." *Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, 1253 (S.D. Fla. 2006). When considering purchasing decisions related to medications, it is logical that consumers would look for affordable name brand or generic medication when search for weight management options and would choose that medication over another without those characteristics. Here, Precision promises consumers that its compounded drugs are essentially Mounjaro at a lower cost. Therefore, Precision's misrepresentation about its compounded drugs essentially being Mounjaro is material to purchasing decisions. *See Axiom Worldwide, Inc.*, 522 F.3d at 1226 (agreeing with the district court's finding that the deception influenced consumer decisions where "[t]he types of false claims that the district court enjoined—regarding NASA affiliation and FDA approval—logically would influence a doctor's decision to purchase the DRX 9000 over a competing machine without those qualities").

18

Fourth, "[t]he Lanham Act defines 'commerce' broadly for jurisdictional purposes as 'all commerce which may lawfully be regulated by Congress.'" *See id.* at 1218 n.5 (quoting 15 U.S.C. § 1127 (2006) and citing *Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672, 677 (9th Cir.2005); *Planetary Motion, Inc.,* 261 F.3d at 1194–95). Precision's advertisements were used "in commerce," because they were offered on its website and social media platform to attract consumers.

Fifth, Eli Lilly is likely to be injured by these false advertisements because Precision is trading on the positive reputation of Mounjaro to convince consumers to purchase Precision's compounded drugs. But, in the event that Precision's customers do not receive the expected results or have a reaction to Precision's compounded drug, the consumer is likely to blame Eli Lilly since she is led to believe she is essentially taking Mounjaro. As such, Eli Lilly is likely to be reputationally and financially harmed. With all five factors being satisfied, Eli Lilly is entitled to a default judgment against Precision on its false advertising claims.

## C.    Relief

As noted above, if a plaintiff is entitled to default judgment on liability, then the Court must consider whether she is entitled to the relief requested in the motion for default judgment. The Court will now discuss each of Eli Lilly's requests in turn.

### i.    Injunctive Relief

As noted above, if a plaintiff is entitled to default judgment on liability, then the Court must consider whether she is entitled to the relief requested in the motion for default judgment. Eli Lilly seeks injunctive relief against Precision under 15 U.S.C. § 1116(a). "Federal courts may grant permanent injunctions where infringement is found to have occurred in order to prevent further infringing use of a mark[.]" *Aronowitz v. Health-Chem*

19

*Corp.*, 513 F.3d 1229, 1242 (11th Cir. 2008). "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction." 15 U.S.C. § 1116(a). And "such injunctions should be designed to keep the former infringers 'a safe distance away' from the protected mark." *Id.* A plaintiff seeking a permanent injunction must demonstrate: "it has suffered an irreparable injury; 2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Eli Lilly has established its entitlement to a permanent injunction. The amended complaint demonstrates that the Mounjaro Marks are recognized nationally, and Precision's unauthorized use of the Mounjaro Marks has confused and is likely to continue confusing consumers. Eli Lilly has shown that it has suffered and will continue to suffer irreparable harm and that a damages award would not be a sufficient remedy because the extent of future damages is unknown. *See 24-7 Bright Star Healthcare, LLC v. Brightstars Helping Hands, LLC*, 2023 WL 5566570, at *4 (M.D. Fla. July 24, 2023), *report and recommendation adopted*, 2023 2023 WL 5205726 (M.D. Fla. Aug. 14, 2023) (finding an injunction proper where future damages were unknown).

By failing to appear and defend itself against Eli Lilly's allegations, Precision has not demonstrated that it will suffer any hardship if the Court enjoins it from the unauthorized use of the Mounjaro Marks. To the extent Precision could face some costs in removing the

Mounjaro Marks from its website and social media platforms, this hardship is minor compared to the harm Eli Lilly will endure (the loss of sales and goodwill) if Precision is not permanently enjoined from using the Mounjaro Marks without authorization. A permanent injunction is the best way to protect the public from future confusion. *See Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("the public interest is served by preventing consumer confusion in the marketplace"). Eli Lilly is entitled to permanent injunctive relief against Precision.[4]

### ii.    Damages

Eli Lilly also seeks to pursue damages but asks that the Court defer on entering a judgment as to that issue. (Doc. 76 at 3 n.1). If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace*, 247 F.R.D. at 681. Unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985). However, no hearing is needed "when the district court already has a wealth of evidence . . . such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir.

---

[4] The proposed language for the permanent injunction comes from paragraph two of Eli Lilly's prayer for relief in the amended complaint. (Doc. 32 at 43). The Court, however, omitted the following portion: "or that Defendants' Unapproved Compounded Drugs are approved by the FDA, have been the subject of clinical studies, or achieve certain therapeutic outcomes." (*Id.*). The harm to Eli Lilly warranting this injunction was in Precision's use of the Mounjaro Marks, not in whether the compounded drugs were approved by the FDA, clinically tested, or had verifiable outcomes. Prohibition of Precision's use of the Mounjaro Marks prevents this harm and such language is included in the Court's proposed injunction. As such, this proposed language is too broad and outside the scope of Eli Lilly's alleged harm.

2005); *see also Wallace*, 247 F.R.D. at 681 ("[A] hearing is not necessary if sufficient evidence is submitted to support the request for damages.").

Here, Eli Lilly explains that damages are currently incalculable because it needs information about Precision's sales, the discovery which were presumably stymied by Precision's failure to participate in this litigation. (Doc. 76 at 3 n.1). Therefore, the undersigned recommends the Court defer entering judgment on the issue until it is properly briefed and, if necessary, an evidentiary hearing is held. *See Infinity Capital Income Fund, LLC v. Nguyen*, 2025 WL 2083414, at *6 (M.D. Fla. June 16, 2025), *report and recommendation adopted*, 2025 WL 1832842 (M.D. Fla. July 3, 2025) (deferring a ruling on damages where the plaintiff did not adequately establish them in its motion for default judgment); *Robbie's of Key West v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1271 (S.D. Fla. 2020) (same); *Arain v. Double R. Remodeling, Inc.*, 2010 WL 1252179, at *4 (M.D. Fla. Mar. 5, 2010), *report and recommendation adopted*, 2010 WL 1252178 (M.D. Fla. Mar. 26, 2010) (finding liability on default judgment and thereafter holding evidentiary hearing on damages).

## IV.    CONCLUSION

In light of the foregoing, the Court **RECOMMENDS:**

1.    Plaintiff Eli Lilly's Motion for Entry of Default Final Judgment Against Defendant Precision (Doc. 76) be **GRANTED**.

2.    The Court finds that Plaintiff Eli Lilly is entitled to a default judgment as to liability against Defendant Precision.

3.    The Court finds that Eli Lilly is entitled to a permanent injunction enjoining Defendant Precision and its officers, agents, servants, employees, and attorneys and all persons acting in concert or participation with any of them, from:

22

a. Using the Mounjaro Marks (No. 6,809,369 and No. 7,068,463) or any mark confusingly similar to them, in connection with the advertising, promoting, marketing, selling or offering for sale of any goods or services (including, but not limited to, compounded drugs) or otherwise engaging in any activity that is likely to cause confusion, cause mistake, or deceive or otherwise infringe any rights of Plaintiff Eli Lilly in the Mounjaro Marks or any similar mark;

b. Falsely stating or suggesting that Precision's compounded drugs are genuine or generic versions of MOUNJARO® or ZEPBOUND®, that Precision is associated or connected in any way with Eli Lilly or its products;

c. Engaging in any unfair competition with Eli Lilly; and

d. Engaging in any deceptive or unfair acts.

4. The Court defers entering judgment on damages and directs Plaintiff Eli Lilly to submit supplemental briefing on damages no later than thirty (30) days after entry of the Court's order.

**IT IS SO REPORTED** in Tampa, Florida, on December 3, 2025.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.